Jason Flanders (Bar No. 238007)
Email: jrf@atalawgroup.com
Kenya Rothstein (Bar No. 340854)
Email: ksr@atalawgroup.com
Aqua Terra Aeris Law Group
8 Rio Vista Ave.
Oakland, CA 94611
T: (916) 202-3018

Benjamin A. Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
Erina Kwon (Bar No. 235079)
Email: erina@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E. 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

*Attorneys for Plaintiff*
LOS ANGELES WATERKEEPER

**JS-6**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>                          Plaintiff,<br><br>     v.<br><br>AEROSPACE DYNAMICS INTERNATIONAL, INC., a California corporation,<br><br>                          Defendant. | Case No. 2:24-cv-08119-CAS-SKx<br><br>**ORDER ENTERING CONSENT DECREE, DISMISSING PLAINTIFF'S CLAIMS WITH PREJUDICE, AND RETAINING JURISDICTION OVER CONSENT DECREE** |

[PROPOSED] ORDER ENTERING CONSENT DECREE, DISMISSING PLAINTIFF'S CLAIMS WITH PREJUDICE, AND RETAINING JURISDICTION OVER CONSENT DECREE

1    Good cause appearing, and the Parties having stipulated and agreed, the Court

2  ORDERS:

3    Plaintiff LOS ANGELES WATERKEEPER'S claims against Defendant

4  AEROSPACE DYNAMICS INTERNATIONAL, INC., as set forth in Civil Case 2:24-

5  cv-08119-CAS-SK are dismissed with prejudice pursuant to FRCP 41(a)(2).

6    The Court shall retain jurisdiction over this matter for the purposes of dispute

7  resolution and enforcement of the Consent Decree, attached hereto as Exhibit A and

8  fully executed and incorporated by reference herein. Each Party shall bear its own

9  attorneys' and expert fees and costs except as provided for in the Consent Decree.

10    IT IS SO ORDERED.

11

12  DATED: July 28, 2025

13                                          HON. CHRISTINA A. SNYDER
                                           United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER ENTERING CONSENT DECREE, DISMISSING PLAINTIFF'S CLAIMS
WITH PREJUDICE, AND RETAINING JURISDICTION OVER CONSENT DECREE

# Exhibit A

1  Jason Flanders (Bar No. 238007)
2  Email: jrf@atalawgroup.com
   Kenya Rothstein (Bar No. 340854)
3  Email: ksr@atalawgroup.com
4  Aqua Terra Aeris Law Group
   8 Rio Vista Ave.
5  Oakland, CA 94611
   (916) 202-3018
6

7  Benjamin Harris (Bar No. 313193)
8  Email: ben@lawaterkeeper.org
   Erina Kwon (Bar No. 235079)
9  Email: erina@lawaterkeeper.org
10 LOS ANGELES WATERKEEPER
   360 E 2nd Street, Suite 250
11 Los Angeles, CA 90012
   Phone: (310) 394-6162
12

13 Attorneys for Plaintiff
14 LOS ANGELES WATERKEEPER

15

**UNITED STATES DISTRICT COURT**
16
**CENTRAL DISTRICT OF CALIFORNIA**

17

18 | LOS ANGELES WATERKEEPER, a | Case No.: 2:24−cv−08119−CAS−SKx
   California non-profit association, |
19 | | **CONSENT DECREE**
20 | Plaintiff, |
21 | v. |
22 |
23 | AEROSPACE DYNAMICS
   INTERNATIONAL, INC., a California |
24 | corporation, |
25 | Defendant. |

26

27 ///

28 ///

129046859.2 0062232-00392

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Defendant Aerospace Dynamics International, Inc. ("Defendant") owns and operates a facility at 25540 and 25571 Rye Canyon Road and 25519 Avenue Stanford, Valencia, CA 91355 under Waste Discharger Identification number 4 19I024961 ("Facility");

**WHEREAS**, the Facility's industrial activities consist of manufacturing parts for the aeronautics and aerospace industries. The Facility is categorized under Standard Industrial Classification ("SIC") Code 3728, covering Aircraft Parts and Auxiliary Equipment, Not Elsewhere Classified;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility ("General Permit" or "Permit")[1], and the Federal

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility results in discharges of pollutants into waters of the United States and are properly subject to regulation by the Clean Water Act Sections 301(a) and 402 and the General Permit. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on July 16, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, on September 20, 2024, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:24−cv−08119−CAS−SK ("Complaint");

[PROPOSED] CONSENT DECREE
129046859.2 0062232-00392

1    **WHEREAS**, Plaintiff's Complaint alleged ongoing violations of the General

2    Permit and the Clean Water Act for Defendant's discharges of pollutants into storm

3    drains and surface waters, including the Santa Clara River and downstream the

4    Pacific Ocean (collectively, "Receiving Waters");

5    **WHEREAS,** Defendant denies all allegations set forth in the 60-Day Notice

6    Letter and the Complaint;

7    **WHEREAS**, Plaintiff and Defendant (each a "Party" and collectively,

8    "Settling Parties" or "Parties") without either adjudication of LA Waterkeeper's

9    claims or any admission by Defendant of any alleged violation, believe that it is in

10   their mutual interest to enter into a Consent Decree setting forth terms and conditions

11   appropriate to resolving the allegations set forth in the 60-Day Notice Letter and

12   Complaint without further proceedings;

13   **WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree

14   shall be made in compliance with all applicable federal, state and local laws, rules

15   and regulations.

16   **NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE**

17   **SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS**

18   **FOLLOWS:**

19   1.    The Court has jurisdiction over the subject matter of this action pursuant

20   to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

21   2.    Venue is appropriate in the Central District Court pursuant to Section

22   505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the

23   alleged violations are taking place is located within this District.

24   3.    The Complaint states a claim upon which relief may be granted against

25   Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

26   4.    LA Waterkeeper has standing to bring this action.

27   ///

28

4

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

5.     The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

## I.    OBJECTIVES

6.     It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.     In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.    AGENCY REVIEW AND DEFINITIONS

### A.    AGENCY REVIEW OF CONSENT DECREE

8.     <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") within five (5) business days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires upon the earlier of the Federal Agencies' no objection letter or forty-five (45) calendar days after receipt by the Federal Agencies ("Agency Review Period Expiration"). Receipt will be evidenced by certified return receipts copies of which shall be provided to

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

Defendant. In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.    <u>Entry of Consent Decree</u>. Following the Agency Review Period Expiration, Plaintiff shall submit the Consent Decree to the Court for entry.

## B.  DEFINITIONS

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.    "BAT" means the Best Available Technology Economically Achievable.

b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

///

[PROPOSED] CONSENT DECREE
129046859.2 0062232-00392

e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.    "Design Storm" means the design storm calculated in accordance with the design storm standards set forth in General Permit for Volume-based BMPs (General Permit § X.H.6.a.) or Flow-based BMPs (General Permit § X.H.6.b.).

g.    "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

h.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

i.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

j.    "Forecasted Rain Event" means a forecasted rain event with fifty percent (50%) or greater chance of producing 0.1 inches over a calendar day as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "Santa Clarita Sports Performance, 25385 Rye Canyon Rd, Valencia, CA 91355"[2].

k.    "MIP" means a Monitoring Implementation Plan.

l.    "PPT" means Pollution Prevention Team.

m.    "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=34.4368&lon=-118.5793.

7

[PROPOSED] CONSENT DECREE

n.    "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

o.    "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

p.    "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

q.    "SWPPP" means a Storm Water Pollution Prevention Plan.

r.    "Term" means the period between the Effective Date and the "Termination Date."

s.    "Termination Date" means the latest of:

    i.    June 30 following two (2) years and three (3) months from the Effective Date if there are no further Exceedances, as that term is defined in Paragraph 22;

    ii.    June 30 following two (2) years after the latest of any Treatment System (pursuant to Paragraph 23.b below) hereunder is fully installed, operational, and optimized, if applicable;

    iii.    seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the later of the dates in Paragraphs 11.s.i. and 11.s.ii. above; or

    iv.    seven (7) days from Defendant's completion of all payments.

t.    "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

///

8

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.    <u>Current and Additional Best Management Practices.</u> At all times during the Term, Defendant shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those necessary to: (1) achieve BAT/BCT standards and (2) comply with each of the General Permit's Receiving Water Limitations.

14.    <u>Rain Gauge/Sensor</u>. Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, except in the event of equipment malfunctions caused by an event outside of Defendant's control. In the event of a rain gauge malfunction, Defendant shall use rain data from National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "Santa Clarita Sports Performance, 25385 Rye Canyon Rd, Valencia, CA 91355" for purposes of precipitation quantities and timing.

15.    <u>Structural and Non-Structural BMPs for the Facility</u>. As soon as possible but no later than sixty (60) days of the Effective Date, unless otherwise noted, Defendant shall develop and implement the following BMPs at the Facility:

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

a.    Throughout the Facility:

 i. Patch, pave, or otherwise resurface areas of degraded concrete, pavement, or asphalt that is exposed to stormwater at the Facility in locations that in Defendant's discretion is necessary to limit the potential for pollutants to settle into holes, cracks, and similar locations from which pollutants may be difficult to remove using sweeping techniques required under this Consent Decree, including in the below listed locations;

  1. The swale on the western side of Building 2 between Discharge Point 3 near Avenue Stanford and Discharge Point 3A as identified in Defendant's SWPPP.

  2. The swale on the northern side of Building 3 between Discharge Point 4 near Avenue Crocker and the southwestern corner of Building 4 as identified in Defendant's SWPPP.

 ii. Implement a sweeping program that includes, mechanical sweeping daily using a PowerBoss Nautilus HD on-site sweeper or equivalent model, broom sweeping twice daily using a Total Clean Glutton Collect® 2411 electric vacuum or equivalent model to access hard to reach areas of chip accumulation that a mechanical sweeper cannot access, scrubbing daily, and power washing and/or steam cleaning weekly in a manner that contains and recycles all water;

 iii. Replace any bins that store aluminum and titanium which do not have fitted tops with bins with fitted tops or place

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

such bins under sufficient cover to prevent exposure to rainfall;

iv. Employ and secure new wattles/filters/filtration socks (biochar or other equivalent media) to remove sediments, metals, and organic materials in storm water discharged from the Facility, and configure such wattles/filters/socks to achieve maximum contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations, including without limitation, at Discharge Point 7. Defendant shall, thereafter, employ and secure new wattles/filters/socks in the same manner annually prior to the start of the Wet Season, no later than September 15th;

v. During each Wet Season, as necessary, replace the wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing pollutant concentrations;

vi. Within twenty-four (24) hours prior to a Forecasted Rain Event, inspect all wattles/filters/socks deployed at the Facility;

vii. Within twenty-four (24) hours prior to a Forecasted Rain Event, remove any exposed industrial waste material and cover all industrial materials that can be readily mobilized by contact with storm water, industrial debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without

11

129046859.2 0062232-00392

limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

viii. Institute an equipment and vehicle maintenance program that ensures:

1. no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

2. maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

3. when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground;

b. At 25540 Rye Canyon Road (Building 1) and 25519 Avenue Stanford (Building 2) Defendant shall:

i. Within 6 months of the Effective Date, completely and permanently cover all equipment and machinery used to process aluminum and titanium chips into bricks. Bins that house aluminum and titanium chips shall be covered or placed under coverings sufficient to prevent exposure to rainfall;

ii. Clean forklifts that are employed in the aluminum and titanium chips process with a Total Clean Glutton Collect® 2411 electric vacuum or equivalent model in a manner to

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

prevent dispersal of chips in a designated area that prevents
chip dispersion.

c.    At 25571 Rye Canyon Road (Buildings 3 and 4) Defendant shall:

    i.    Within 6 months of the Effective Date, completely and
permanently cover all chip recycling machinery and
materials that are stored outside sufficient to prevent
exposure to rainfall;

    ii.    Within 6 months of the Effective Date, place all industrial
materials that can be readily mobilized by contact with
storm water that are stored in areas leading to discharge
points 4 and 7 under a canopy or patio cover sufficient to
prevent exposure to rainfall or move to the area east of
Building 3;

d.    Within fourteen (14) days of the deadline to implement all the
above BMPs, Defendant shall confirm to LA Waterkeeper in
writing, with photographs, that the BMPs have been implemented
as set forth above.

**B.    SAMPLING AT THE FACILITY**

16.    Defendant shall develop a monitoring program consistent with the
General Permit. Beginning with the 2025-2026 Reporting Year and for the remaining
duration of the Term, Defendant shall collect samples of storm water discharge from
each Discharge Point as follows: from at least four (4) Qualifying Storm Events,
including the first two (2) Qualifying Storm Events during the first half of the
Reporting Year and the first two (2) Qualifying Storm Events during the second half
of the Reporting Year. Such sampling shall take place as soon as possible within the
four (4) hour period required by the General Permit § XI.B.5. If, due to lack of
Qualifying Storm Events, fewer than two Qualifying Storm Events are collected in

[PROPOSED] CONSENT DECREE
129046859.2 0062232-00392

the first half of a Reporting Year, that shall be compensated by collecting an additional sample from an additional Qualifying Storm Event during the second half of a Reporting Year, until a total of four samples are collected for any Reporting Year occurring during the term of this Agreement. If Defendant would have been required to collect samples during a rain event pursuant to this Consent Decree had such rain event produced a discharge, but Defendant did not collect samples because such rain event did not produce a discharge, then Defendant shall document the inability to sample by taking photographs during the rain event of each Discharge Point from which no discharge occurred. Defendant shall submit such photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain event, within five (5) days of a written request for such records by LA Waterkeeper.

17.    <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Where the concentration of a pollutant is "non-detect" in four (4) consecutive samples from Qualifying Storm Events at all Facility Discharge Points, Defendant may eliminate the pollutant from future laboratory analyses without violating this Consent Decree. Should Defendant intend to conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit for any reason, including without limitation as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendant shall immediately notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification. As also with newly added parameters, here the concentration of a pollutant is "non-detect" in four (4) consecutive samples from Qualifying Storm Events at all Facility Discharge

1  Points, Defendant may eliminate the pollutant from future laboratory analyses

2  without violating this Consent Decree.

3      18.    Laboratory and Holding Time. Except for pH samples, Defendant shall

4  deliver all samples to a California-certified environmental laboratory for analysis

5  within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be

6  completed onsite using a portable instrument that is calibrated and used according to

7  the manufacturer's instructions or otherwise in accordance with the General Permit.

8      19.    Detection Limit. Defendant shall request that the laboratory use

9  analytical methods adequate to detect the individual pollutants at or below the values

10 specified in the General Permit and Table 1 below.

11     20.    Reporting. Defendant shall provide complete laboratory results of all

12 samples collected at the Facility to SMARTS in accordance with the General Permit

13 and within fourteen (14) days of receiving the laboratory report with the results shall

14 either (i) notify LA Waterkeeper by email of such upload to SMARTS or (ii) provide

15 copies to LA Waterkeeper.

16     **C.    REDUCTION OF POLLUTANTS IN DISCHARGES**

17     21.    Table 1 Numeric Limits. Defendant shall develop and implement BMPs

18 to reduce pollutants in storm water at the Facility to levels at or below those in Table

19 1.

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

**TABLE 1[3]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Copper | 0.0332 mg/L | NAL |
| Iron | 1 mg/L | NAL |
| Oil and Grease | 15 mg/L | NAL |
| pH | 6.0-9.0 S.U. | NAL |
| Aluminum | 0.75 mg/L | NAL |
| Nickel | 1.02 mg/L | NAL |
| Zinc | 0.26 mg/L | NAL |

22. <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 is defined as follows: where the concentration of the same pollutant in any two (2) storm water samples from a given Discharge Point in a given Reporting Year, beginning with the 2025-2026 Reporting Year, exceeds any numeric limit contained in Table 1. An Exceedance shall constitute a violation of this Consent Decree.

23. <u>Action Plan</u>. As of the Effective Date, and for the remainder of the Term, if (a) Defendant has an unauthorized non-storm water discharge in violation of Paragraph 12, (b) storm water samples demonstrate an Exceedance as defined above,[4] or (b) after a Treatment System (pursuant to Paragraph 23.b below) is fully installed, operational, and optimized, if ever, and the Treatment System discharges untreated storm water in smaller than a Design Storm, Defendant shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating future Exceedances at all applicable Discharge Points and/or eliminating discharges in smaller than a Design

---

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for iron is either increased to 1.1 mg/L or decreased to 0.90 mg/L, such new NAL, and not 1 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for iron being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.
[4] Two samples of the same parameter at the same discharge point that are above the numeric limit set forth in Table 1 is required to trigger the Action Plan requirements. If the Action Plan requirement is triggered, two more samples of the same parameter at the same discharge point are required to be above the numeric limit before another Action Plan will be required.

Storm, and/or achieving compliance with the non-storm water discharge prohibition ("Action Plan"). However, an Action Plan shall not be required when the discharge in smaller than a Design Storm or the Exceedance for the same pollutant in the same drainage area were addressed in a previous Action Plan in the same Reporting Year and such BMPs were not yet implemented as of the date of the applicable unauthorized non-storm water discharge, discharge in smaller than a Designer Storm, or QSE sampling that led to the Exceedance.[5] The complete Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of (a) the applicable unauthorized non-storm water discharge, (b) the Defendant's receipt of the laboratory report demonstrating the Exceedance, or (c) the applicable discharge in smaller than a Design Storm, as applicable.

        a.    <u>Action Plan Requirements</u>. Each complete Action Plan submitted shall include at a minimum:

        i. (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s), the applicable unauthorized non-storm water discharge, and/or the applicable discharge in smaller than a Design Storm;

        ii.    (2) a narrative assessment of the source of each pollutant exceedance, applicable unauthorized non-storm water discharge, and/or applicable discharge in smaller than a Design Storm;

        iii.    (3) the identification of additional BMPs that will be implemented to achieve compliance with the numeric limit(s), unauthorized non-storm water discharge

---

[5] An Action Plan is not required if a previous Action Plan's BMPs were not yet fully implemented before the QSE that caused the Exceedance.

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

prohibition, and/or Design Storm standard, as well as the

design plans and calculations of these additional BMPs; and

iv.       (4) time schedules for implementation of the

proposed BMPs. The time schedule(s) for implementation

shall ensure that all BMPs are implemented as soon as

possible, but in no event later than ninety (90) days

following the submission of the Action Plan, or within six

(6) months if installing one or more Treatment Systems

pursuant to Paragraph 23.b below,  unless a later

implementation date is mutually agreed upon by the Settling

Parties. Within fourteen (14) days of the deadline for

Defendant to implement the BMPs set forth in the Action

Plan, Defendant shall confirm to LA Waterkeeper in

writing, with photographs, where applicable, that such

BMPs have been implemented as set forth in the Action

Plan.

b.       <u>Treatment System or Infiltration System</u>. Beginning in the 2025-
2026 Reporting Year and for the remaining duration of the Term,
the first Action Plan triggered as a result of an Exceedance at a
given Discharge Point, except with respect to Discharge Point 4
("DP4") if Defendant elects to install an infiltration system as set
forth below, shall include a plan for the implementation and
operation of an advanced storm water treatment system
("Treatment System") for, at minimum, the applicable Discharge
Point, as well as any other Discharge Point that Defendant elects
to treat using the same Treatment System.

///

18

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

i.      The proposed Treatment System shall either include pre-settling, polymer- or electronically-assisted coagulation, followed by filtration, or Defendant may propose the use of an alternative treatment technology of equivalent effectiveness for pollutants listed in Table 1.[6]

ii.     Treatment System Design Standards. The Treatment System shall be capable of treating industrial storm water runoff generated at the Facility by a Design Storm and reducing pollutant concentrations to achieve compliance with meet the Table 1 numeric limit(s), as well as the design plans and calculations of these additional BMPs.

c.      Infiltration System at DP4. However, the first Action Plan triggered as a result of an Exceedance at DP4, beginning in the 2025-2026 Reporting Year and for the remaining duration of the Term, may, at Defendant's election, include a plan to install an infiltration system that eliminates storm water discharge at DP4 in lieu of including a plan for the implementation and operation of a Treatment System at DP4.

d.      Action Plan Proposed BMPs. The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

i.      Hydrologic Controls. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

---

[6] Treatment systems may include Clear Water Services (https://www.clearwaterservices.com/).

[PROPOSED] CONSENT DECREE
129046859.2 0062232-00392

ii.     <u>Sweeping</u>. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iii.    <u>Treatment Systems</u>. Installing additional components or systems, or otherwise improving, a Treatment System, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

iv.    <u>Infiltration System</u>. Installing additional components or systems, or otherwise improving, an Infiltration System, or making changes to the operation and maintenance protocols for such system, to provide more effective infiltration treatment of storm water.

v.    <u>Evaluation of Existing BMPs</u>.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

e.    <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's reasonably recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

1    provisions of this Consent Decree, set out in Section IV below.

2    Disputes regarding the adequacy of a particular BMP shall not

3    impact the schedule for implementing any other BMP set forth in

4    the Action Plan.

5    f.    Defendant shall revise the then-current SWPPP to reflect the

6    changes required by the Action Plan, as set forth in Paragraph

7    28.b.i. below.

8    g.    <u>Action Plan Payments</u>. Defendant shall pay Four Thousand

9    Dollars ($4,000.00) for an Action Plan submitted to LA

10    Waterkeeper that includes implementing one or more Treatment

11    Systems and/or infiltration systems (as defined in Paragraphs 23.b

12    and 23.c above), and otherwise Two Thousand Dollars ($2,000)

13    each time an Action Plan is submitted to LA Waterkeeper.

14    Payment is due at the same time that the applicable Action Plan is

15    submitted and shall be made to "Los Angeles Waterkeeper" via

16    certified mail, return receipt requested to Los Angeles

17    Waterkeeper, c/o Erina Kwon, 360 E. 2nd Street, Suite 250, Los

18    Angeles, CA 90012. Failure to submit a payment as required

19    under this Paragraph will constitute a breach of the Consent

20    Decree.

21    **D.    VISUAL OBSERVATIONS**

22    24.    <u>Storm Water Discharge Observations</u>. During the Term, appropriately

23    trained personnel shall conduct visual observations during the Facility's operating

24    hours during at least each QSE required to be sampled pursuant to Paragraph 16

25    above. Such inspections shall comply with all requirements of Section XI.A.2 of the

26    General Permit.

27    ///

28

21

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

25.    <u>Monthly Visual Observations</u>. During the Term, appropriately trained personnel shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. Such observations shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

26.    <u>Visual Observations Records</u>. Defendant shall maintain observation records, including photographs, where applicable, to document compliance with Paragraphs 24 and 25. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing. Defendant shall provide LA Waterkeeper with a copy of those records within fourteen (14) days of receipt of a written request from LA Waterkeeper for those records.

27.    <u>Employee Training Program</u>. Within thirty (30) days of the Effective Date, Defendant shall develop and implement an employee training program that

meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

a.   Materials. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

b.   Language. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c.   Training Frequency. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d.   Sampling Training. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e. <u>Visual Observation Training</u>. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f. <u>Non-Storm Water Discharge Training</u>. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g. <u>Employees</u>. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees (i.e., employees that were not employed as of the Effective Date) shall participate in the Training Program within thirty (30) days of their hiring date; and

h. <u>Records</u>. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

28. <u>SWPPP Revisions</u>.

a. <u>Initial SWPPP Revisions</u>. Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within forty-five (45) days of the Effective Date for LA Waterkeeper's review and comment. The complete, updated SWPPP shall contain, at a minimum, the following elements:

[PROPOSED] CONSENT DECREE
129046859.2 0062232-00392

i.    A revised pollutant source assessment, including all elements required by Section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.   A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by Section X.G of the General Permit;

iii.  Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

iv.   Site maps that comply with Section X.E of the General Permit and provisions of this Consent Decree, including the following revisions:

1.  For the site map for 25540 Rye Canyon and 25519 Avenue Stanford, include downspout locations, locations where filter socks are deployed, locations of all underground conveyances, and ensure that flow arrows accurately represent flow directions;

2.  For the site map for 25571 Rye Canyon Road, include downspout locations, locations where filter socks are deployed, locations of all underground storage conveyances; locations of infiltration chambers (including the underground piping that

25

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

1    drains to the chambers), and ensure that flow arrows

2    accurately represent flow directions;

3        v.    A MIP as required by Sections XI and X.I of the General

4    Permit;

5        vi.    A designation (by position/title) of employees responsible

6    for carrying out storm water management, monitoring,

7    sampling and SWPPP implementation, e.g., visual

8    inspection of each specific area, monitoring each specific

9    BMP, sampling, etc.

10        b.    <u>Additional SWPPP Revisions</u>.

11        i.    Within thirty (30) days after approval of any Action Plan by

12    LA Waterkeeper (or resolution pursuant to Dispute

13    Resolution), Defendant shall revise the then-current

14    SWPPP, as necessary, to reflect the changes required by the

15    Action Plan and submit the complete, updated SWPPP to

16    LA Waterkeeper for LA Waterkeeper's review and

17    comment.

18        ii.    Within thirty (30) days after any changes in industrial

19    activities or sources of industrial pollutants, changes to

20    Discharge Points, or changes to sections of the SWPPP

21    identified in the SWPPP as requiring a SWPPP revision

22    (including but not limited to, changes in Facility contacts or

23    PPT members, changes or additions of BMPs, or changes in

24    or additions of industrial activities that impact storm water

25    discharge), Defendant shall revise the then-current SWPPP

26    to reflect such changes and submit the complete, updated

27

28

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

SWPPP to LA Waterkeeper for LA Waterkeeper's review
and comment.

    c.    <u>Review of SWPPP</u>.  For any SWPPP updates submitted by
Defendant, LA Waterkeeper shall have thirty (30) days upon
receipt of Defendant's complete, updated SWPPP to provide
Defendant with comments. Within thirty (30) days of receiving
LA Waterkeeper's comments and proposed changes to the
SWPPP, Defendant shall consider each of the comments and
proposed changes and either accept them or justify in writing why
a change is not incorporated. The Parties agree to work in good
faith to resolve any disputes with respect to the SWPPP, and any
remaining disputes will be resolved through timely initiation of
the dispute resolution procedures in Section IV below. Following
its incorporation of proposed modification or additions (if any)
into each revised SWPPP, Defendant shall upload the revised
SWPPP to SMARTS.

**E.    COMPLIANCE MONITORING AND REPORTING**

29.    LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during every year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding the additional Site Inspection at Plaintiff's request, which Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least twenty-four (24) business hours' notice prior to a Site Inspection in anticipation of wet weather and at least seventy-two (72) hours'

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

notice prior to a Site Inspection in anticipation of dry weather. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 57. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to direct Defendant to take photographs or video recording during any Site Inspection to be provided to LA Waterkeeper afterwards.

    30.    <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

        a.    Except for as provided in Paragraph 20, Defendant shall provide notice to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 57, of all compliance documents, written communications and/or correspondences (except automated or non-substantive replies and confirmations), or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality. Defendant shall give such notice within three (3) business days of making such submission. Where Defendant is required to upload documents directly to SMARTS, Defendant may send copies to LA Waterkeeper or

[PROPOSED] CONSENT DECREE
129046859.2 0062232-00392

1    notify LA Waterkeeper of the submission to SMARTS within two

2    (2) business days of the submission.

3    b.    Within ten (10) business days of receipt by Defendant, Defendant

4    shall send to LA Waterkeeper, by electronic mail to the

5    individual(s) designated below at Paragraph 57, any compliance

6    document, inspection report, written communication and/or

7    correspondence (except automated or non-substantive replies and

8    confirmations), or any document related to storm water quality at

9    the Facility received by Defendant from the Regional Board, the

10    State Board, and/or any state or local agency, county,

11    municipality.

12    31.    <u>Compliance Monitoring</u>. Defendant shall partially defray costs

13    associated with Plaintiff's monitoring of Defendant's compliance with this Consent

14    Decree during the Term through June 30 following two (2) years from the Effective

15    Date by paying Ten Thousand Dollars ($10,000.00) within thirty (30) days of the

16    Entry Date. For each year the Term continues beyond June 30 following two (2)

17    years from the Effective Date, if any, Defendant shall pay Two Thousand Five

18    Dollars ($2,500.00) per year, with the first such payment being paid on June 30

19    following two (2) years from the Effective Date, and each subsequent payment on

20    June 30 annually thereafter for the remainder of the Term.  Payment shall be made

21    via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return

22    receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street,

23    Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this

24    Paragraph will constitute breach of the Consent Decree.

25    ///

26    ///

27    ///

28

29

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

**F.    ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

32.    <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in Santa Clara River Watershed, Defendant shall make a payment totaling sixty thousand($60,000.00) to the Rose Foundation made within thirty (30) days of the Entry Date, payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

33.    <u>LA Waterkeeper's Fees and Costs</u>. Defendant shall pay a total of Seventy Thousand Dollars ($70,000.00) to LA Waterkeeper to partially reimburse Plaintiff for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: Aqua Terra Aeris Law Group and delivered by overnight carrier to 4030 Martin Luther King Jr. Way, Oakland, CA 94609. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34.    <u>Missed Deadlines</u>. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, LA Waterkeeper shall provide written notice to Defendant of such missed deadline by electronic mail to the individual(s) designated below at Paragraph 57. Defendant shall have five (5) business days from receipt of such notice to respond and, if necessary, cure such alleged delinquency.  If Defendant fails to respond, and if necessary, cure such alleged delinquency within five (5) business days of receipt of LA Waterkeeper's notice, then Defendant shall make a stipulated payment of two

129046859.2 0062232-00392

1  hundred fifty dollars ($250) per additional day that is not excused by Force Majeure

2  until such failure is remedied. All stipulated payments shall be made by check

3  payable to: Rose Foundation for Communities and the Environment, and such funds

4  shall be used for the sole purpose of funding environmentally beneficial projects, as

5  described in Paragraph 32. Payment shall be sent via overnight mail to Rose

6  Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendant agrees to make

7  the stipulated payment within fourteen (14) days after the resolution of the event that

8  precipitated the stipulated payment liability.

9      35.  <u>Interest on Late Payments</u>. Defendant shall pay interest on any

10  payments, fees, or costs owed pursuant to this Consent Decree that are not received

11  by the due date. The interest shall accrue starting the next business day after the

12  payment is due and shall be computed at a rate equal to the lower of: (i) 7% per year

13  (0.583% per month); or (ii) the maximum rate permitted by applicable law. Interest

14  shall continue to accrue daily on any outstanding balance until Defendant is current

15  on all payments then due under this Consent Decree, and shall be paid at the same

16  time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on

17  late payments shall be paid by check payable to: Rose Foundation for Communities

18  and the Environment, and such funds shall be used for the sole purpose of funding

19  environmentally beneficial projects, as described in Paragraph 32. Payment shall be

20  sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA

21  94607.

22  **IV.  DISPUTE RESOLUTION**

23      36.  <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the

24  dispute resolution procedures of this Section IV by notifying the other Party in

25  writing of the matter(s) in dispute and of the disputing Party's proposal for resolution.

26  The Parties shall then meet and confer in good faith (either telephonically or in

27

28

129046859.2 0062232-00392

1 person) within ten (10) days of the date of the notice in an attempt to fully resolve the

2 dispute no later than thirty (30) days from the date of the meet and confer.

3     37.   <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within

4 thirty (30) days from the date of the meet and confer described in Paragraph 36, the

5 Parties agree that the dispute may be submitted for formal resolution by filing a

6 motion before the United States District Court for the Central District of California.

7 The Parties agree to request an expedited hearing schedule on the motion.

8     38.   In resolving any dispute arising from this Consent Decree before the

9 Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to

10 the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. §

11 1365(d), and applicable case law interpreting such provisions, or as otherwise

12 provided for by statute and/or case law.

13 **V.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

14     39.   <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the

15 above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf

16 and on behalf of its officer, directors, and employees release Defendant, its officers,

17 directors, managers, employees, members, parents, subsidiaries, divisions, corporate

18 affiliates, successors or assigns, agents, attorneys and other representatives, from and

19 waives all claims that were or could have been raised in the 60-Day Notice Letter

20 and/or the Complaint up to and including the Termination Date of this Consent

21 Decree.

22     40.   <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the

23 above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf

24 and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and

25 each of their successors or assigns, release Plaintiff, its officers and directors, from

26 and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to

27 and including the Termination Date of this Consent Decree.

28

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

41. <u>Future Administrative Proceedings</u>. Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

42. <u>Waiver of California Civil Code § 1542</u>.  Upon the Effective Date, the Parties further expressly waive any rights or benefits available to them under the provisions of California Civil Code § 1542.  The parties acknowledge they are familiar with section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

While a Party may assert that California Civil Code section 1542 applies to general releases only, and that the releases herein are limited releases, the Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims arising from, or related to, the allegations and claims as set forth in the 60-Day Notice, and/or the Complaint, up to and including the Termination Date of this Consent Decree.

## VI. MISCELLANEOUS PROVISIONS

43. <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability,

nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

44.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45.    <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

46.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

47.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

48.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

49.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

///

[PROPOSED] CONSENT DECREE
129046859.2 0062232-00392

50. <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

51. <u>Diligence</u>. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

52. <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

53. <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

54. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

55. <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

56. <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

1  without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic,

2  public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism,

3  sabotage, or terrorism; restraint by court order or public authority or agency; or action

4  or non-action by, or inability to obtain the necessary authorizations or approvals from

5  any governmental agency. A Force Majeure event shall not include normal inclement

6  weather, economic hardship, inability to pay, or employee negligence. Any Party

7  seeking to rely upon this Paragraph to excuse or postpone performance shall have the

8  burden of establishing that it could not reasonably have been expected to avoid the

9  Force Majeure event and which by exercise of due diligence has been unable to

10  overcome the failure of performance. The Parties shall exercise due diligence to

11  resolve and remove any Force Majeure event.

12      57.    <u>Correspondence</u>. All notices required herein or any other correspondence

13  pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail

14  transmission to the e-mail address listed below, or if electronic mail is not feasible,

15  then by certified U.S. mail with return receipt, or by hand delivery to the following

16  addresses:

17  <u>If to Plaintiff</u>:                          <u>If to Defendant</u>:
18  Los Angeles Waterkeeper                   Philip Eldridge
    Ben Harris                                25540 Rye Canyon Rd
19  Erina Kwon                                Santa Clarita, California 91355
    Madeleine Siegel                          Email:
20  360 E 2nd St., Suite 250            phil.eldridge@pccairframe.com
21  Los Angeles, CA 90012                     Phone: (510) 449-3048
    Email: ben@lawaterkeeper.org
22  Email: erina@lawaterkeeper.org
    Email: madeleine@lawaterkeeper.org
23
    Phone: (310) 394-6162
24

25

26

27

28

[PROPOSED] CONSENT DECREE

| With copies to: | With copies to: |
|---|---|
| Aqua Terra Aeris Law Group | Laura Kerr |
| Jason R. Flanders | Stoel Rives LLP |
| Kenya S. Rothstein | 760 SW 9th Ave. #3000 |
| 8 Rio Vista Ave. | Portland, OR 97205 |
| Oakland, CA 94611 | Laura.Kerr@stoel.com |
| Email: jrf@atalawgroup.com | (503) 294-9176 |
| Email: ksr@atalawgroup.com | |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

58.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

///

///

///

///

[PROPOSED] CONSENT DECREE

129046859.2 0062232-00392

APPROVED AS TO CONTENT

Dated: June 9th _____, 2025        By: _____
                                     Bruce Reznik
                                     Executive Director
                                     Los Angeles Waterkeeper

Dated: June 9th _____, 2025        By: _____
                                     Philip J. Eldridge
                                     Vice President and General Manager
                                     Aerospace Dynamics International,
                                     Inc.

APPROVED AS TO FORM

                                     AQUA TERRA AERIS LAW GROUP

Dated: June 9th _____, 2025        By: _____
                                     Kenya S. Rothstein
                                     Jason R. Flanders
                                     Attorney for Plaintiff
                                     Los Angeles Waterkeeper

                                     STOEL RIVES LLP

Dated: June 9 _____, 2025          By _____
                                     Laura Kerr
                                     Kelly Beskin
                                     STOEL RIVES LLP
                                     Attorneys for Defendant
                                     AEROSPACE DYNAMICS
                                     INTERNATIONAL, INC.

37

[PROPOSED] CONSENT DECREE

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: July 28, 2025                    CENTRAL DISTRICT OF CALIFORNIA


_____

HONORABLE CHRISTINA A. SNYDER
UNITED STATES DISTRICT COURT

39